UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMSTRONG RYAN, JR., | Case No. CV 11-7420 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER OF REMAND |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## I. SUMMARY

On September 15, 2011, plaintiff Armstrong Ryan, Jr. ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 19, 2011 Case Management Order ¶ 5.
///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.  BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 28, 2009, plaintiff filed an application for Supplemental Security Income benefits.  (Administrative Record ("AR") 116).  Plaintiff asserted that he became disabled on July 1, 2008, due to paranoid schizophrenia, bipolar disorder, seizures, glaucoma, suicidal thoughts, auditory hallucinations, and diabetes.  (AR 135).  The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on April 20, 2011.  (AR 33-64).

On June 3, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 16).  Specifically, the ALJ found:  (1) plaintiff suffered from the following severe impairments:  degenerative disc disease of the lumbar spine, right hand deformity secondary to gunshot wound, seizure disorder, and hypertension (AR 11); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 12); (3) plaintiff retained the residual functional capacity to perform essentially light work (20 C.F.R. § 416.967(b)) with certain additional limitations[1] (AR 12); (4) plaintiff could not perform his past relevant work (AR 14); (5) although plaintiff is able to communicate in English, he is illiterate (20 C.F.R.

///
///

---

[1] The ALJ determined that plaintiff:  (1) could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; (2) could sit for six hours total in an eight-hour workday; (3) could stand and walk for six hours total in an eight-hour workday; and (4) could not perform fine motor activities with the right hand.  (AR 12).

§ 416.964(b)(1))[2] (AR 15); (6) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically ticket taker [DOT 344.667-010] and flagger [DOT 372.667-022] (AR 15-16); and (7) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 13).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

///
///

---

[2] Social Security regulations define illiteracy as "the inability to read or write . . . a simple message [in English] such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 416.964(b)(1).

|     |     |
| --- | --- |
| (2) | Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three. |
| (3) | Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four. |
| (4) | Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five. |
| (5) | Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.  Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales,

402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff asserts that the ALJ erred at step five in finding that plaintiff could perform the occupations of ticket taker and flagger because such jobs require occasional fingering and level 2 language skills which are inconsistent with plaintiff's inability to perform fine motor activities with his right hand and his inability to read and write in English. (Plaintiff's Motion at 2-6) (citing AR 12, 15). The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Law

If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R. § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). Where, as here, a claimant suffers from both exertional and nonexertional limitations, the Grids do not mandate a finding of disability based solely on the claimant's exertional limitations, and the

claimant's non-exertional limitations are at a sufficient level of severity such that the Grids are inapplicable to the particular case, the Commissioner must consult a vocational expert.[3]  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007); see Lounsburry v. Barnhart, 468 F.3d 1111, 1116 (9th Cir.), as amended (2006); Cooper v. Sullivan, 880 F.2d 1152, 1155 (9th Cir. 1989).

      The vocational expert's testimony may constitute substantial evidence of a claimant's ability to perform work which exists in significant numbers in the national economy when the ALJ poses a hypothetical question that accurately describes all of the limitations and restrictions of the claimant that are supported by the record.  See Tackett, 180 F.3d at 1101; see also Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations); Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001) ("If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value.").

      ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy." Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20 C.F.R. § 416.966(d)(1) (DOT is source of reliable job information).  The DOT is the presumptive authority on job classifications.  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social

---

[3]The severity of limitations at step five that would require use of a vocational expert must be greater than the severity of impairments determined at step two.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).

Security Ruling 00-4p). In order for an ALJ to accept vocational expert testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir.), as amended (1997) (citations omitted).

### B. Analysis

The ALJ erred at step five because he found plaintiff not disabled based on testimony from the vocational expert which, without adequate explanation, deviated from the DOT.

First, the vocational expert's testimony was inconsistent with the DOT's language skill requirement for the occupations of ticket taker and flagger. In his hypothetical question to the vocational expert, the ALJ noted that the hypothetical claimant was "illiterate . . . but [] able to communicate in English." (AR 61-62). The vocational expert testified that, in spite of such illiteracy, plaintiff (or a hypothetical individual with plaintiff's characteristics) could perform the jobs of ticket taker and flagger. (AR 61-62). According to the DOT, however, such jobs involve level 2 language skills which, among other things, require a "[p]assive vocabulary of 5,000-6,000 words," as well as the ability to "[r]ead at [a] rate of 190-215 words per minute" and "[w]rite compound and complex sentences." DOT §§ 344.667-010, 372.667-022. Therefore, an individual who could not read or write at all would, necessarily, be precluded from such jobs.

Second, neither the vocational expert nor the ALJ adequately explained the apparent deviations. As noted above, the vocational expert's cursory acknowledgment that her testimony was consistent with the DOT is plainly
///

incorrect.[4] (AR 62). When plaintiff's attorney asked whether the job of flagger "[w]ould [] have a literacy requirement, being a state employee[,]" the vocational expert's reply was essentially unresponsive (*i.e.*, "[t]hat's not the only job. It is a job for construction crews.") (AR 63). Although the vocational expert did testify that the job of ticket taker would not require the ability to read,[5] she did not address whether the same job could also be performed by a person who had no ability to write. (AR 63). The vocational expert also failed to explain whether and to what extent the number of ticket taker jobs in the national economy would be eroded if the individual performing the job was illiterate.[6] Accordingly, the vocational expert's testimony, which the ALJ adopted, could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the occupations of ticket taker and flagger. Pinto, 249 F.3d at 846.

Finally, the Court cannot find such errors harmless as defendant points to no other persuasive evidence in the record which could support the ALJ's determination at step five that plaintiff was not disabled. See, e.g., Oeur v. Astrue, 2012 WL 234642, *6 (C.D. Cal. Jan. 24, 2012) (citing "[n]umerous cases [that] have reversed ALJ decisions where the ALJ and the vocational expert failed to

---

[4] When the ALJ asked "is your testimony consistent with the Dictionary of Occupational Titles," the vocational expert responded, simply, "[y]es." (AR 62).

[5] The vocational expert gave the following testimony when examined by plaintiff's attorney: "Q. Okay. And for a ticket taker, would you have to be able to read -- [¶] A. No. [¶] Q. -- what somebody hands you? [¶] No. You'd tear a ticket and you [¶][¶] . . . hand back the stub." (AR 63).

[6] Even assuming plaintiff's illiteracy was not inconsistent with the language skills required of a ticket taker, the ALJ's finding that plaintiff could perform such job still lacks substantial evidence. According to the DOT, the job of ticket taker requires occasional fingering. See DOT § 344.667-010. At the hearing, the vocational expert also suggested that a ticket taker would need the use of both hands (*i.e.*, to "tear a ticket" and "hand back the stub"). (AR 63). Such a bilateral function is inconsistent with plaintiff's complete inability "to perform fine motor activities with the right hand." (AR 12, 62). Neither the vocational expert nor the ALJ gave any explanation for such inconsistency.

explain a deviation between a claimant's literacy and [DOT] jobs requiring language levels of 1 and 2"). Defendant suggests that any failure to explain the conflict between plaintiff's illiteracy and the DOT language requirements for the jobs of ticket taker and flagger was harmless given plaintiff's past work in positions that required the same language level. (Defendant's Motion at 4-6). Nonetheless, the ALJ did not suggest as much in the decision, and the Court cannot so conclude on this record.[7] The Court is constrained to review the reasons cited by the ALJ. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

## V.  CONCLUSION[8]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 21, 2012

                                                  /s/
                                     Honorable Jacqueline Chooljian
                                     UNITED STATES MAGISTRATE JUDGE

---

[7] In fact, defendant's argument is contradicted by the ALJ's determination that plaintiff could no longer perform "any past relevant work." (AR 14) (emphasis added).

[8] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate.

[9] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).